IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT F. LAMBERT,

          Plaintiff,

      v.

JOANNE B. BARNHART
Commissioner of Social Security,

          Defendant.

CV- 05-399 ST

FINDINGS AND RECOMMENDATION

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Robert Lambert ("Lambert"), brings this action pursuant to the Social Security Act, 42 USC § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits and Supplemental Security Income payments. For the reasons set forth below, the decision of the Commissioner should be affirmed.

1 - FINDINGS AND RECOMMENDATION

**PROCEDURAL BACKGROUND**

Lambert filed an application for benefits on November 8, 2001, alleging disability since August 1, 1997, due to hip and leg pain, and chronic skin rashes.[1] Tr. 15, 56-58, 67. His last insured date for Disability Insurance Benefits was December 31, 2001. Tr. 76. The application was denied initially and upon reconsideration. Tr. 42-51. On August 13, 2004, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 204-42. In a decision dated December 22, 2004, the ALJ found that Lambert was not entitled to benefits. Tr. 12-23. On March 4, 2005, the Appeals Council denied Lambert's request for review (Tr. 5-7), making the ALJ's decision the final decision of the Commissioner. Lambert now seeks judicial review of the Commissioner's decision.

**STANDARDS**

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert denied*, 517 US 1122 (1996). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F2d 841, 849 (9th Cir 1991) (citation omitted).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42

---

[1] Although listed as an exhibit, the administrative record does not contain a copy of the application for Supplemental Security Income Benefits (which apparently was given a protective filing date of October 3, 2001) or copies of the denials of that application prior to the hearing. *See* Tr. 4.

2 - FINDINGS AND RECOMMENDATION

USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986) (citations omitted). The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F3d at 1039-40.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999):

Step One. The Commissioner determines whether claimant is engaged in substantial gainful activity. If so, claimant is not disabled. If claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate claimant's case under step two. 20 CFR §§ 404.1520(b), 416.920(b).

Step Two. The Commissioner determines whether claimant has one or more severe impairments. If not, claimant is not disabled. If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under step three. 20 CFR §§ 404.1520(c), 416.920(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether claimant's impairment "meets or equals" one of the

impairments listed in the Social Security Administration ("SSA") regulations, 20 CFR Part 404, Subpart P, Appendix 1. If so, claimant is disabled. If claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of claimant's case proceeds under step four. 20 CFR §§ 404.1520(d), 416.920(d).

Step Four. The Commissioner determines whether claimant is able to perform work he or she has done in the past. If so, claimant is not disabled. If claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of claimant's case proceeds under step five. 20 CFR §§ 404.1520(e), 416.920(e).

Step Five. The Commissioner determines whether claimant is able to do any other work. If not, claimant is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show a significant number of jobs exist in the national economy that claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates a significant number of jobs exist in the national economy that claimant can do, claimant is not disabled. If the Commissioner does not meet this burden, claimant is disabled. 20 CFR §§ 404.1520(f)(1), 416.920(f)(1).

At steps one through four, the burden of proof is on the claimant. *Tackett*, 180 F3d at 1098. At step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id*.

## ALJ's DECISION

At step one, the ALJ found Lambert had engaged in substantial gainful activity from March through May 1998 and June through August 2001. Tr. 17. This finding is not in dispute.

At step two, the ALJ found Lambert had the medically determinable severe impairments of high blood pressure, mild degenerative changes in the hips and cervical spine, and intermittent rash on his hands. *Id*. This finding is not in dispute.

At step three, the ALJ found that Lambert's impairments did not meet or medically equal the criteria of any listed impairments. *Id*. This finding is not in dispute.

At step four, the ALJ found that Lambert was not fully credible and was unable to return to his past relevant work. Tr. 20. The ALJ found that Lambert retained the residual functional capacity ("RFC") to perform light work, sitting or standing up to six hours a day, but must avoid high heat, moisture, humidity, and reaching overhead. *Id*. The ALJ also found Lambert requires the ability to change between sitting and standing frequently. *Id*. This finding is in dispute.

At step five the ALJ found that Lambert can work at such jobs as an office helper, rental clerk, and assembler. Tr. 21. The ALJ also found that Lambert could perform the work of a sales attendant, but that the number of available jobs would be reduced by 50% because of Lambert's need to alternate between sitting and standing. *Id*. As a result, she found Lambert not disabled within the meaning of the Act. This finding is in dispute.

## DISCUSSION

Lambert contends that the ALJ erred by: (1) rejecting the opinion of his treating physician; (2) posing an inadequate hypothetical question to the VE; and (3) failing to develop the record. As discussed below, this court finds that the ALJ's conclusions are based on proper legal standards and supported by substantial evidence in the record.

///

///

## I. Opinion of the Treating Physician

Lambert argues that the ALJ failed to incorporate into the RFC analysis limitations arising from his neck, right arm and right hand pain and numbness as indicated by his treating physician, Peter Bogard, O.D.

Dr. Bogard began treating Lambert in July 2002 for bilateral hip pain and skin lesions on his arms. Tr. 197. Lambert received physical therapy and reported improvement in August 2002, though he continued to have "marked and multiple trigger points." *Id.* Dr. Bogard saw Lambert again in October 2002 for hip pain and prescribed massage therapy. Tr. 197.

On December 9, 2003, Lambert complained of right shoulder pain and "pain down to his fourth and fifth fingers" which had started only about four weeks prior. Tr. 195. He had good grip strength bilaterally and tingling in his third and fourth fingers which became painful when bent to the right and were relieved when bent to the left. *Id.* Dr. Bogard diagnosed probable degenerative neck disease. An MRI on December 29, 2003 revealed "mild degenerative disk disease throughout the cervical spine" and "a small disk marginal osteophyte and an uncinate spurring on the right at C6-7 level caused moderate narrowing of the right neural foramen." Tr. 199.

On December 29, 2003, Lambert complained of numbness in the third and fourth digits of his right hand and a "general ache down his arm." Tr. 194. Dr. Bogard recommended that

6 - FINDINGS AND RECOMMENDATION

Lambert receive an epidural injection. There is no evidence as to whether Lambert received the injection or that he saw Dr. Bogard again before the August 2004 hearing.

On August 7, 2004, Dr. Bogard completed a Medical Source Statement on which he was asked to evaluate Lambert's capabilities. Tr. 201-03. Dr. Bogard indicated that Lambert was capable of standing and /or walking continuously without a break for 45 minutes. Tr. 202. He also opined that Lambert was capable of standing three hours in an eight hour workday, sitting one hour without a break, and sitting four hours with the usual breaks. *Id.* Dr. Bogard stated that Lambert was limited to "occasional" reaching, defined as "up to 1/3 of the time." Tr. 203. In addition, Dr. Bogard checked the boxes indicating that Lambert was limited to "occasional" climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, feeling, seeing, speaking and hearing. *Id*. It appears, though the record is nearly illegible, that Dr. Bogard opined that Lambert was capable of unlimited pushing and/or pulling. *Id.* However, Dr. Bogard noted that he had not seen Lambert since January 2004. *Id*.

As to the hip, right arm and right hand conditions, the ALJ found that Dr. Bogard's records did not support Lambert's complaints:

> After October 2002 the claimant did not receive treatment for any musculoskeletal problem until December 9, 2003, at which time he reported shoulder strain and some pain and numbness in the fourth and fifth fingers of the right hand, conditions that had been present only for about four weeks. However, no complaints about hip pain were recorded at that time. On January 29, 2004 Dr. Bogard attributed sensory loss in the hand to degenerative changes in the cervical spine, but a recent MRI scan of the upper spine showed only mild degenerative changes, insufficient to confirm nerve involvement in the upper extremities. Nerve conduction studies or other tests that might provide direct evidence of denervation in the hands were not done apparently. Since January 2004 Dr. Bogard does not appear to have seen the claimant, noting on a functional capacity assessment that he had not seen the patient since then. At

7 - FINDINGS AND RECOMMENDATION

> the hearing, the claimant reported cramping daily in both his
> hands, but these symptoms do not appear to have been reported to
> Dr. Bogard or any other medical provider. Accordingly, Dr.
> Bogard's chart notes do not support that [*sic*] claimant's
> allegations of long term chronic debilitating hip pain, or significant
> manipulative impairment.

Tr. 18 (citation omitted).

The ALJ also rejected some of Dr. Bogard's August 7, 2004 evaluation as to Lambert's limitations:

> The "light" exertional category incorporates certain postural and
> manipulative limitations that ordinarily are associated with more
> rigorous exertional activity. Beyond that there is little evidence
> to support Dr. Bogard's finding the claimant unable to do more
> than "occasional" postural or manipulative functioning across the
> board. Most such limitations were not reported to Dr. Bogard by
> the claimant according to his chart notes, nor found by DDS
> physicians. The objective medical evidence does not show more
> than minimal abnormality. He had shoulder pain and some
> degenerative disc disease identified about a year ago. Thus, it is
> accepted that he has some limitation affecting his ability to do
> overhead reaching. Such limitations also could affect his ability to
> comb [*sic*] ladders, ropes or scaffolds. However, there does not
> appear to be a significant underlying pathological basis to establish
> other postural limitation[s] cited by Dr. Bogard.
>
> Additionally, there is no basis to establish any significant manipula-
> tive impairment, contrary to Dr. Bogard's findings. For a few months
> in late 2003, the claimant reported pain and numbness in the outer
> two fingers on the right hand, but no such long term symptoms are
> documented by any medical provider. The claimant reported daily
> hand cramping in his testimony, but that symptom was not reported
> to Dr. Bogard. In the absence of reliable evidence of significant long
> term manipulative impairment, and inconsistent claimant's allegations
> on that point, no specific manipulative limitations are found,
> Dr. Bogard's report notwithstanding.

Tr. 19 (citation omitted).

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Holohan v. Massanari,* 246 F3d 1195, 1202 (9th Cir 2001); 20 CFR § 404.1527(d)(2). An ALJ may reject the uncontradicted medical opinion of a treating physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Id.* at 1202, citing *Reddick v. Chater,* 157 F3d 715, 725 (9th Cir 1998). If the treating physician's medical opinion is inconsistent with other substantial evidence in the record, treating source medical opinions are still entitled to deference and must be weighed using all the factors provided in 20 CFR § 404.1527. *Id*, citing SSR 96-2p. An ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if she provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*

Lambert complains that the ALJ should have accepted Dr. Bogard's assessment that he can only occasionally reach, as opposed to occasional overhead reaching only, and made the same error by ignoring Lambert's manipulative limitations. However, the ALJ's rejection of Dr. Bogard's postural and manipulative limitations is supported by specific and legitimate reasons which, in turn, are supported by substantial evidence in the record. As stated by the ALJ, Dr. Bogard's opinion regarding Lambert's postural or manipulative limitations is inconsistent with other substantial evidence in the record. Lambert did not complain to Dr. Bogard or other medical providers of these limitations. In addition, the comprehensive orthopedic examination Lambert received on December 11, 2001, from Tyler M. Arkless, M.D, failed to reveal any such limitations. Tr. 151-60. To Dr. Arkless, Lambert reported chronic hip pain, more severe on the

9 - FINDINGS AND RECOMMENDATION

right side, but no problems with reaching, grasping, or hand or finger manipulation or coordination. Tr. 151-52. Furthermore, the objective medical evidence of the MRI showed only mild degenerative changes in Lambert's neck. Thus, the ALJ did not err by rejecting portions of Dr. Bogard's assessment.

## II. Adequacy of the Hypothetical Question

Lambert contends that the hypothetical question posed to the VE was inadequate because it did not include manipulative limitations, as well as limitations on interactions with other people due to his skin condition. Because the record does not support any manipulative limitations as discussed above, it was not error for the ALJ to exclude such limitations from the hypothetical question. With respect to any limitation on public interaction based on Lambert's skin condition, the record does not contain substantial evidence of such a limitation.

Barbara J. Largent, M.D., saw Lambert in October 1996 "with complaint of skin rash." Tr. 144. Dr. Largent wrote that Lambert had been seen in September 1996 for the same problem which was successfully treated with hydrocortosone cream. *Id*. Dr. Largent diagnosed pustular dermatitis and prescribed continuation of the hydrocortosone cream. *Id.* Lambert was seen again by Dr. Largent in August 1997 for pustular dermatitis of the hands and back of neck. Tr. 142. Lambert told Dr. Largent that the cream "seems to help him some, but he says it doesn't take it all away and he wonders if he is going to be stuck with this forever." *Id*.

In his December 2001 examination, Dr. Arkless noted "multiple healed somewhat circular scars diffusely across the posterior forearms greater than the neck and face; density is moderate across the forearms," as well as a number of nearly healed ulcerations. Tr. 154.

Dr. Bogard noted "skin lesions on [Lambert's] arms" in July 2002, diagnosed a "staph" infection, and prescribed antibiotics. Tr. 197. In October 2002, Dr. Bogard stated Lambert had "small, erythematous lesions all over his body" and referred him to a dermatologist. Tr. 196. There is no evidence that Lambert saw a dermatologist.

Lambert testified that the rash causes painful open sores. Tr. 220. It occurs on his hands, arms, shoulders, the back of his neck and his face. *Id.* He finds it painful to make a fist, though he admits that he had the rash for many years while working. Tr. 221. The rash is irritated by clothing. *Id.* Lambert testified that he gets blisters on his face "[n]ot that much, but I do get them there. And it takes a long time for those to go away." Tr. 222.

The ALJ found that Lambert had a severe impairment of an intermittent rash on his hands. Tr. 17. She also noted that reviewing physicians found Lambert unable to handle extremes of wetness, humidity and heat because of chronic hand rashes. Tr. 20, 177. Accordingly, the ALJ found that Lambert's RFC was limited in that he must avoid high heat, moisture and humidity, and that he was prevented from engaging in occupations such as food preparation. Tr. 20.

Lambert argues that his skin rash causes a limitation in his ability to interact with others, including the public and coworkers. He contends that all of the positions identified by the VE require contact with either the public or coworkers, causing the ALJ to rely upon an invalid VE opinion. However, there is no evidence from any medical provider to suggest that Lambert's skin condition should limit his ability to interact with others. Instead, the skin rash had been successfully treated for a time with hydrocortosone cream and antibiotics. Lambert did not follow up on the referral to a dermatologist and admits that he worked while suffering from the

11 - FINDINGS AND RECOMMENDATION

rash. No physician limited Lambert from interacting with others, but instead only limited him from working with extremes of wetness, humidity and head which the ALJ incorporated into the hypothetical question to the VE. Thus, the ALJ's determination that Lambert is not limited from interaction with others due to his skin rash is supported by substantial evidence.

### III. Failure To Develop The Record

Lambert argues that the ALJ failed fully to develop the record by rejecting the manipulative limitations identified by Dr. Bogard and by failing to ask any medical provider about the significance of his skin rash and any implication for interactions with others.

"An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari,* 276 F3d 453, 459-60 (9th Cir 2001). If a claimant presents evidence that is inconsistent or unsupported by the record, and the ALJ cannot resolve that inconsistency, the ALJ has a duty to make further inquiries. 20 CFR §§ 404.1512, 416.912. If, however, the ALJ can resolve the inconsistency based on substantial evidence in the record, there is no need to inquire further. *Thomas v. Barnhart,* 278 F3d 947, 956 (9th Cir 2002).

Here the evidence is not ambiguous or inadequate to support the ALJ's decision. As discussed above, the ALJ applied the correct legal standards, properly analyzed Dr. Bogard's opinion, and cited substantial evidence in finding Lambert not disabled. Hence, the ALJ did not fail to fully develop the record.

### RECOMMENDATION

For the reasons set forth above, the Commissioner's decision should be AFFIRMED and this case should be DISMISSED.

**SCHEDULING ORDER**

Objections to the Findings and Recommendation, if any, are due March 6, 2006. If no objections are filed, then the Findings and Recommendation will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district court judge and go under advisement.

Dated this 10th day of February, 2006.

s/ Janice M. Stewart_____
JANICE M. STEWART
United States Magistrate Judge